**COASTAL REHABILITATION SERVICES, P.A.,**
**Plaintiff,**

v.

**Charles COOPER, Gary C. Cooper, individually and d/b/a Winyah Home Health Care, and Winyah Convalescent Center, Defendants.**

Charles Cooper, Gary C. Cooper, individually and d/b/a Winyah Home Health Care, and Winyah Convalescent Center, Defendants and Interpleader Plaintiffs,

Coastal Rehabilitation Services, P.A., Counterclaim Defendant

**The United States of America, Interpleader Defendant.**

No. C/A 2:02–4081–18.

United States District Court, D. South Carolina, Charleston Division.

March 31, 2003.

Lawrence S. Connor, IV, Surfside Beach, SC, for plaintiff.

Celeste T. Jones, Susan M. Hayes, Columbia, SC, for defendant.

## ORDER

NORTON, District Judge.

This matter is before the court on the United States's motion to dismiss the interpleader complaint against it pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure.

## I. Background [1]

This case originated in state court as a lawsuit brought by plaintiff Coastal Rehabilitation Services ("Coastal") against defendants (collectively "Winyah Defendants"). Coastal is a speech and occupational therapy services provider. Charles Cooper, now deceased, was the owner and employee of Winyah Home Health Care and Winyah Home Health Care and Winyah Convalescent Center. The Estate of Charles Cooper now owns these companies. Gary Cooper was an employee of Winyah Home Health Care and Winyah Convalescent Center. Coastal entered into contractual agreements with Winyah Home Health Care and Winyah Convalescent Center wherein Coastal agreed to provide speech therapy ser-

---

1. The following facts are stated in the light most favorable to Winyah Defendants, the non-moving parties.

vices for their patients and residents. On a monthly basis, Coastal submitted bills to Winyah Convalescent Center for services performed that month for patients who were covered by Medicare. Winyah Convalescent Center then submitted these bills to the United States under the Medicare program and was reimbursed. Winyah Convalescent Center began to suspect that Coastal's bills were fraudulent and eventually refused to pay Coastal $153,409.97 for services rendered to these patients. As a result of this non-payment, Coastal filed suit on August 13, 1998, against Winyah Defendants in state court.

While the state court action was pending, the United States began an investigation into the bills submitted by Winyah Defendants for Coastal's alleged services. The state court stayed its case while the United States was conducting its investigation. In July 2002, the United States and Winyah Defendants entered into a settlement agreement ("Settlement Agreement") under which Winyah Defendants reimbursed the United States $154,612.00 for all services that were not properly billed to Medicare based on Coastal's allegedly fraudulent billings. Winyah Defendants moved to amend their answer in state court to file an interpleader action against the United States. Winyah Defendants were concerned that they "may be subject to double liability in that they have already reimbursed the United States for

all services that were not properly billed to Medicare based on Coastal's fraudulent Medicare billings and ... could also be required to pay Coastal's fraudulent claim for these funds." (Interpleader Compl. at 6.) The state court granted Winyah Defendant's motion to amend its answer to include an interpleader complaint against the United States. The state court noted that "the USA raised other substantive issues asserting defenses to the proposed Amended Complaint itself ... [that] are more properly addressed to the federal courts following removal." United States then removed the case to this court and filed this motion to dismiss.

## II. Law/Analysis

 Interpleader under Fed.R.Civ.P. 22 [2] is a procedural device that allows a disinterested stakeholder to bring a single action joining two or more adverse claimants to a single fund. *See Chase Manhattan Bank v. Mandalay Shores Coop. Housing Ass'n, (In re Mandalay Shores Coop. Housing Ass'n )*, 21 F.3d 380, 383 (11th Cir.1994); *White v. FDIC*, 19 F.3d 249, 251 (5th Cir.1994); *Sec. Ins. Co. of Hartford v. Arcade Textiles, Inc.*, 40 Fed. Appx. 767, 769, 2002 WL 1473417, *1 (4th Cir. July 10, 2002) (UNPUBLISHED TABLE OPINION). Interpleader is an equitable remedy designed to protect the stakeholder from multiple, inconsistent judgments and to relieve it of the obligation of determining which claimant is

**2.** Rule 22 provides as follows:

(1) Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability. It is not ground for objection to the joinder that the claims of the several claimants or the titles on which their claims depend do not have a common origin or are not identical but are adverse to and independent of one another, or that the plaintiff avers that the plaintiff is not liable in whole or in part to any or all of the claimants. A defendant exposed to similar liability may obtain such interpleader by way of cross-claim or counterclaim. The provisions of this rule supplement and do not in any way limit the joinder of parties permitted in Rule 20.

(2) The remedy herein provided is in addition to and in no way supersedes or limits the remedy provided by Title 28, U.S.C., §§ 1335, 1397, and 2361. Actions under those provisions shall be conducted in accordance with these rules.

entitled to the fund. *Sec. Ins. Co. of Hartford,* 40 Fed. Appx. at 769, 2002 WL 1473417 at *1 (citing 4 James Wm. Moore *et al., Moore's Fed. Practice* § 22.02[1] (3d ed.2001)). Although an interpleader action is often brought as an original action by a plaintiff, a defendant can bring an interpleader action as a counterclaim against the plaintiff and may join additional parties under the joinder provisions of Fed. R.Civ.P. 19 and 20. *Grubbs v. General Elec. Credit Corp.,* 405 U.S. 699, 705 n. 2, 92 S.Ct. 1344, 31 L.Ed.2d 612 (1972); *Moore's Fed. Practice,* § 22.02[4]. Here, Winyah Defendants filed an interpleader action as a counterclaim against Coastal and joined the United States as an interpleader defendant under Fed.R.Civ.P. 20.

### A. Sovereign Immunity

■ The United States filed a motion to dismiss under Fed. R. Civ. P 12(b)(1) for lack of subject matter jurisdiction on the ground that it may not be joined as an interpleader defendant in this case because it has not waived its sovereign immunity. "Absent a waiver of sovereign immunity, the Federal Government is immune from suit." *Loeffler v. Frank,* 486 U.S. 549, 554, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988). The absence of such a waiver is a jurisdictional defect. *Kulawy v. U.S.,* 917 F.2d 729, 733 (2d Cir.1990). When the United States has challenged subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1), the plaintiff bears the burden of persuasion on the jurisdictional issue because "the party who sues the United States bears the bur-

den of pointing to . . . an unequivocal waiver of immunity." *Williams v. U.S.,* 50 F.3d 299, 304 (4th Cir.1995) (internal citations and punctuation marks omitted). "In ruling on a Rule 12(b)(1) motion, the court may consider exhibits outside the pleadings." *Id.*

■ Winyah argues that sovereign immunity does not bar an interpleader suit against the United States. However, it is well-established that "[t]he United States may not be required to interplead when it has not waived its sovereign immunity." *Ky. ex rel. United Pac. Ins. Co. v. Laurel County,* 805 F.2d 628, 636 (6th Cir.1986) (quoting 7 Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, *Fed. Practice and Procedure* § 1721, at 654 (2d ed.1986)); *see also United States v. Dry Dock Sav. Inst.,* 149 F.2d 917, 918–19 (2d Cir.1945); *Moore's Fed. Practice,* § 22.08[1]. "An interpleader proceeding does not establish jurisdiction." *Laurel County,* 805 F.2d at 636. Thus, this court does not have jurisdiction over Winyah Defendants' interpleader action against the United States unless they can unequivocally show that the United States has waived its sovereign immunity.[3]

Winyah Defendants argue that the United States has waived its sovereign immunity under 28 U.S.C. § 2410(a)(5), which provides that "the United States may be named a party in any civil action or suit . . . of interpleader or in the nature of interpleader with respect to, real or personal property on which the United States has or claims a mortgage or other lien."[4]

---

**3.** Although Winyah Defendants are correct that an interpleader suit against the United States does not seek to recover money from the United States Treasury, interpleader actions against the United States are still barred by sovereign immunity unless the United States has waived such immunity. *See, e.g., Laurel County,* 805 F.2d at 636.

**4.** The entire text of § 2410(a) provides as follows:

§ 2410. Actions affecting property on which United States has lien

(a) Under the conditions prescribed in this section and section 1444 of this title for the protection of the United States, the United States may be named a party in any civil action or suit in any district court, or in any State court having jurisdiction of the subject matter—

(1) to quiet title to,

The United States argues that this statute does not apply because it has never had nor claimed to have "a mortgage or other lien" on any real or personal property of the Winyah Defendants. Winyah Defendants do not dispute that the United States never had a mortgage or lien against their property. Rather, Winyah Defendants argue that the United States had a "claim" against them because it sought to recover money from them based on allegations of false claims. (Winyah Response at 14–15.) Winyah Defendants argue that this claim was essentially a lien, and the United States should not be required to assert a formal lien before waiving its sovereign immunity to an interpleader action under § 2410(a)(5). (Winyah Response at 14–15.)

■ However, the plain text of § 2410(a)(5)—entitled "[a]ctions affecting property on which United States has lien"—refers only to "a mortgage or other lien." A "lien" is defined as "[a] legal right or interest that a creditor has in another's property, lasting usu[ally] until a debt or duty that it secures is satisfied." *Black's Law Dictionary* 922 (6th ed.1990). "[T]he United States contend[ed] that it ha[d] certain civil claims against Winyah under the False Claims Act, 31 U.S.C. §§ 3729–3733, other federal statutes, and/or common law doctrines." (Settlement Agreement ¶ II(D).) However, it never claimed to have "a mortgage or oth-er lien" on these funds. The United States settled with Winyah Defendants without filing any complaint asserting these claims. In the cases cited by the Winyah Defendants in which courts have required the United States to interplead under § 2410(a)(5), the United States had formal tax liens. *See TMG II v. United States*, 778 F.Supp. 37, 42 (D.D.C.1991); *Kulawy v. United States*, 917 F.2d 729 (2d Cir.1990). Winyah Defendants have not cited any precedent for requiring the United States to interplead based on an investigation and settlement of potential claims under the False Claims Act on the grounds that such investigation and claims amount to a "mortgage or other lien" within the scope of § 2410(a)(5). Such an expansive interpretation of § 2410(a)(5) would vastly expand the scope of cases in which the United States would be required to interplead under this statute. Thus, under its plain language,[5] § 2410(a)(5) does not apply to this case because there is no "real or personal property on which the United States has or claims a mortgage or other lien." [6]

■ Winyah Defendants also argue that this court has jurisdiction under 28 U.S.C. § 1331, the federal question subject matter jurisdiction statute. (Winyah Response at 10 n.1.) However, § 1331 is a general subject matter jurisdiction statute and does not constitute a waiver of sovereign immu-

---

(2) to foreclose a mortgage or other lien upon,
(3) to partition,
(4) to condemn, or
(5) of interpleader or in the nature of interpleader with respect to,
real or personal property on which the United States has or claims a mortgage or other lien.

**5.** Limiting § 2410(a)(5) to formal "liens" is also supported by the detailed process in § 2410(b)-(e) for resolving "liens" held by the United States.

**6.** Winyah Defendants also argue that the United States may not "strip a federal court of jurisdiction under § 2410 by the simple expedient of obtaining possession of the property." *TMG II*, 778 F.Supp. at 42. However, in order for this principle to apply, there must be jurisdiction under § 2410 in the first place. Here, the United States never had or claimed "any mortgage or other lien" against property held by Winyah Defendants, and therefore this argument fails.

nity. *Cf. Kulawy,* 917 F.2d at 733 (holding that 28 U.S.C. § 1340 was a general jurisdiction statute that did not waive sovereign immunity). Similarly, none of the other statutes cited by Winyah Defendants—28 U.S.C. §§ 1355, 1442, 1444, and 2501(a)—constitute a waiver of the United States's sovereign immunity in this case. Thus, this court does not have jurisdiction over this case because the United States has not waived its sovereign immunity and therefore may not be required to interplead.

### B. Fed.R.Civ.P. 22

■ The United States argues that even if it had waived its sovereign immunity, the interpleader complaint against it should be dismissed under Fed. R. Civ. P 12(b)(6) for failure to state a claim because it does not state a valid interpleader action within the scope of Fed.R.Civ.P. 22. Winyah Defendants contend that they may invoke the Rule 22 in this case because they may be exposed to double liability to the United States and Coastal. Specifically, Winyah Defendants argue that they "may be subject to double liability in that they have already reimbursed the United States for all services that were not properly billed to Medicare based on Coastal's fraudulent Medicare billings and ... could also be required to pay Coastal's fraudulent claim for these funds." (Interpleader Compl. at 6.) Thus, Winyah apparently argues that the "fund" is the money that Winyah paid to the United States in settlement of the allegedly false claims that Winyah had submitted under the Medicare program for the services allegedly performed by Coastal. (Winyah Response at 16.) However, an interpleader action can-

not be brought under these circumstances because the United States and Coastal are not adverse claimants to this "fund." *White v. FDIC,* 19 F.3d 249, 251 (5th Cir.1994); *Sec. Ins. Co. of Hartford v. Arcade Textiles,* 40 Fed. Appx. 767, 769, 2002 WL 1473417 at *1. The United States has recovered the payments it made to Winyah Defendants under the Medicare program and therefore no longer has a claim against Winyah Defendants for this "fund." [7] Although Coastal has a claim against Winyah Defendants seeking payment for its alleged services, it is not seeking to recover the Medicare payments that Winyah Defendants reimbursed to the United States. Accordingly, Coastal does not have any claim to the alleged "fund" held by the United States. Thus, this case does not fit within the scope of Fed. R.Civ.P. 22 because the United States and Coastal are not adverse claimants to a single fund in which Winyah Defendants are disinterested stakeholders. *Id.*

### C. Motion to Remand

Coastal filed a motion to remand this action if this court were to grant the motion to dismiss the United States as a party. First, Winyah Defendants argue that Coastal's motion is untimely under 28 U.S.C. § 1447(c) because it was filed more than thirty days after the Notice of Removal. However, § 1447 also provides that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." Thus, the motion to remand is not untimely if this court lacks subject matter jurisdiction.

---

**7.** Winyah Defendants argue that they are still subject to potential liability to the United States because the Settlement Agreement leaves open the possibility that the United States may pursue them criminally and administratively by banning them from the Medicare program. However, these future criminal or administrative actions against Winyah Defendants are not claims by the United States to the alleged "fund" that Winyah Defendants reimbursed to the United States.

Coastal argues that the only alleged grounds for federal subject matter jurisdiction in this case was the interpleader action against the United States. Once the United States is dismissed, there is no diversity jurisdiction under 28 U.S.C. § 1332 because Coastal and Winyah Defendants are not of completely diverse citizenship. Winyah Defendants argue that there is federal question subject matter jurisdiction under 28 U.S.C. § 1331 because at least two of their defenses to Coastal's complaint raise questions of federal law. Winyah Defendants cite an exception to the well-pleaded complaint rule that when a plaintiff brings an interpleader action, "although the plaintiff's claim does not raise a federal question, it may stake the federal court's jurisdiction on a defense to a claim that would raise a federal question and that defendant could have asserted in a coercive action." *Commercial Union Ins. Co. v. U.S.*, 999 F.2d 581, 585 (D.C.Cir.1993). However, this exception to the well-pleaded complaint rule does not apply in this case because neither of the defendants to Winyah Defendants' interpleader action—Coastal or the United States—have raised any defenses that raise a question under federal law and that they could have asserted in a coercive action. Rather, Winyah Defendants are attempting to base federal jurisdiction on its own defenses to the original state court complaint instead of the potential defenses of the interpleader defendants. Thus, there is no federal question or other subject matter jurisdiction in this case after the United States has been dismissed.

### III. Conclusion

It is therefore,

**ORDERED,** for the foregoing reasons, that the United States's motion to dismiss the interpleader complaint against it be **GRANTED.**

It is **FURTHER ORDERED** that this action be **REMANDED** to state court based on lack of subject matter jurisdiction.

**AND IT IS SO ORDERED.**